JS-6

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Geraldine Soat Brown | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 1082 | **DATE** | 12/13/2004 |
| **CASE TITLE** | International Brotherhood of Electrical Workers vs. Internet Construction, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set out in the Memorandum Opinion and Order, plaintiff's Amended Motion for Summary Judgment is granted. Judgment is entered in favor or plaintiff and against defendant in the amount of $165,514.31. Plaintiff's request for audit fees, liquidated damages and interest is denied. Plaintiff's request for attorneys' fees is denied without prejudice. Pursuant to Rule 54(d)(2), plaintiff may file a motion for attorneys' fees no later than 1/10/05. Any opposition to that motion shall be filed no later than 1/31/05. Taxable costs pursuant to 28 U.S.C. § 1920 are awarded to plaintiff. Enter Memorandum Opinion and Order. Terminate case. /s/ Geraldine Soat Brown

(11) ■ [For further detail see order attached to the original minute order.]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED DEC 15 2004**

| | |
|---|---|
| INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION NO. 196<br>    Plaintiff,<br><br>v.<br><br>INTERNET CONSTRUCTION, INC.,<br>    Defendant. | Case No. 03 C 1082<br>Magistrate Judge Geraldine Soat Brown |

## MEMORANDUM OPINION AND ORDER

Plaintiff International Brotherhood of Electrical Workers, Local Union No. 196 ("Local 196") brought this action against defendant Internet Construction, Inc. ("Internet"), alleging that Internet breached a collective bargaining agreement between the parties and requesting declaratory judgment and other relief. (Compl. at 1; Mem. Law Supp. Pl.'s Am. Mot. Summ. J. ("Pl.'s Mem.") at 1-2.) [Dkt 1, 17.] Local 196 has moved for summary judgment [dkt 17], and Internet has not filed any opposition to that motion. The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Dkt 5, 6.]

For the reasons set forth below, Local 196's motion for summary judgment is granted and judgment is entered in favor of Local 196 in the amount of $165,514.31. Local 196's request for audit fees, liquidated damages and interest is denied. Local 196's request for attorneys' fees is denied without prejudice.

1



## JURISDICTION

Local 196 brought its complaint under Section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185, as a suit for violation of a collective bargaining agreement between an employer and a labor organization representing employees in an industry affecting commerce. (Compl. ¶ 4.)

## FACTUAL BACKGROUND[1]

### A.  The Parties and Their Agreement

Local 196 is a labor organization whose principal office is located in Elgin, Illinois. (Pl.'s LR Stmt. ¶ 2.) Internet is an Illinois corporation with its principal place of business in Lockport, Illinois. (*Id.* ¶ 3.)

On June 21, 2001, Internet executed a Letter of Assent with Local 196. (*Id.* ¶ 7; Compl. Ex. A.) Pursuant to the Letter of Assent, Local 196 and Internet agreed to adopt, abide and be bound by the terms and provisions of the Outside Telephone Construction 6-196-B labor agreement (the "Agreement") entered into between Local 196 and the American Line Builders Chapter of the National Electrical Contractor's Association ("NECA"), and all extensions, renewals, modifications

---

[1] The following facts are taken from Local 196's Revised Statement of Undisputed Facts and Supporting Affidavits, cited herein as: "Pl.'s LR Stmt. ¶ ___" and "___ Aff. ¶ ___." [Dkt 17.] Internet did not respond to Local 196's Revised Statement of Undisputed Facts. Because Internet did not respond, the statements contained Local 196's Revised Statement are deemed admitted pursuant to Local Rule 56.1(b)(3)(B). *See* L.R. 56.1(b)(3)(B) (stating that "[a]ll material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party"); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

and amendments thereto. (*Id.*) The Agreement was renewed by the signatories for the period effective June 1, 2001 through November 30, 2004. (Pl.'s LR Stmt. ¶ 8.)

Under Section 1.06 of the Agreement, all grievances or questions in dispute shall be adjusted by the duly authorized representatives of Internet and Local 196. (*Id.* ¶ 14.) Under Section 1.07 of the Agreement, if the representatives of Internet and Local 196 are unable to adjust any matter within 48 hours, they shall refer that matter to the Labor Management Committee. (*Id.* ¶ 15.)

## B. The Parties' Dispute and the Labor Management Committee's Decision

After the Letter of Assent was executed, Internet hired employees represented by Local 196 and paid those employees wages and fringe benefits pursuant to terms of the Agreement. (*Id.* ¶ 9.) Internet also made contributions to the pension and welfare fund in accordance with the terms and provisions of the Agreement. (*Id.* ¶ 10.) In July 2002, Internet was performing cable television work covered by the Agreement at job sites in Sandwich, Illinois. (*Id.* ¶ 11.) Internet refused to assign the Sandwich cable television work to employees represented by Local 196 at that time, or any time since then. (*Id.* ¶ 12.) Internet did not dispute that it has been in violation of the Agreement and Letter of Assent since July 2002. (*Id.* ¶ 13.) Although not expressly stated in the complaint, it appears that the asserted violation is Internet's failure to hire employees represented by Local 196 for the Sandwich work.

Representatives of Internet and Local 196 were unable to resolve the dispute over Internet's failure to assign the cable television work pursuant to Section 1.06 of the Agreement. (Pl.'s LR Stmt. ¶ 14.) Thus, pursuant to Section 1.07 of the Agreement, Local 196 referred the dispute to the Labor Management Committee. (*Id.* ¶ 15.) On or about September 3, 2002, the American Line

Builders chapter of NECA mailed Internet a notice that Local 196 had filed a grievance against Internet claiming that Internet was working within their jurisdiction and that American Line Builders had scheduled a Labor Management Committee meeting to address those issues on September 10, 2002. (*Id.* ¶ 16; Compl. Ex. B.) On September 10, 2002, the Labor Management Committee held a hearing on the grievance filed against Internet. (Pl.'s LR Stmt. ¶ 17.) Local 196 appeared in support of its grievance; Internet did not appear. (*Id.* ¶ 17; Affidavit of Edgar Mings ¶ 12.)[2] The Labor Management Committee considered the evidence and arguments presented by Local 196 at the September 10, 2002 hearing, and, on September 12, 2002, issued a written decision in which it determined that Internet was bound to and in violation of the Agreement, and that it must comply with the Agreement. (Pl.'s LR Stmt. ¶¶ 18, 19; Compl. Ex. C; Mings Aff. ¶ 13-14.) On September 12, 2002, the Labor Management Committee served its decision on Internet by mail. (Pl.'s LR Stmt. ¶ 19; Mings Aff. ¶ 14.) Internet failed to comply with the decision issued by the Labor Management Committee. (Pl.'s LR Stmt. ¶ 20.) In January 2003, pursuant to the terms of the Agreement, Local 196 engaged a certified public accounting firm to conduct an audit of Internet's books and records. (Affidavit of Marie Smith ¶ 3; Pl.'s Mem. at 4.)[3] Internet would not submit to an audit at that time. (*Id.*)

C. **The Complaint and the Audit**

On February 12, 2003, Local 196 brought a complaint in this action to: (1) declare Internet

---

[2] Edgar Mings is the Business Manager of Local 196. (Mings Aff. ¶ 1.)

[3] Marie Smith is an auditor employed with a certified public accounting firm, Levinson Simon & Sprung, who prepared an audit and a revised audit in connection with this matter. (Smith Aff. ¶¶ 1, 8, 11.)

bound to the Agreement with Local 196, (2) declare Internet in breach of the Agreement with Local 196, (3) order Internet to comply with the terms and provisions of the Agreement, and (4) enforce an arbitration award against Internet, by ordering Internet to submit to an audit of its books and records and pay damages to Local 196 and its fringe benefit trust funds, with the amount of such damages to be determined by the audit. (Pl.'s LR Stmt. ¶ 1; Compl. at 5.)

Internet ultimately agreed to submit to an audit by an accounting firm on behalf of Local 196 during July and August 2003. (Pl.'s LR Stmt. ¶ 21.) The audit covered the time period of June 21, 2001 through June 23, 2003. (*Id.*) The audit was completed and a report was submitted to all parties on October 31, 2003. (*Id.*; Smith Aff. ¶ 9.) The audit report was generated based on the information provided by Internet to the auditor. (Pl.'s LR Stmt. ¶ 22.) The audit report included a finding that Internet was delinquent in fringe benefit contributions in the amount of $182,162.88. (*Id.* ¶ 23.) The cost of the audit was $1,872.50. (*Id.*) In December 2003, Local 196's attorney forwarded to the auditor, Marie Smith, a letter from Internet's attorney, challenging certain portions of the audit report. (Smith Aff. ¶ 10.) Local 196's attorney subsequently forwarded additional documentation and records from Internet to Ms. Smith in support of Internet's challenges to the audit. (*Id.* ¶ 11.) Based on Internet's objections and the additional documentation received, Ms. Smith prepared a revised audit report, which was dated February 17, 2004. (Pl.'s LR Stmt. ¶ 24; Smith Aff. ¶ 11; Mings Aff. ¶ 20.) The revised audit, which superseded the October 31, 2003 audit report, showed a delinquency of fringe benefit contributions in the amount of $165,514.31. (Pl.'s LR Stmt. ¶ 24-25.) The cost of preparing the revised audit report was $227.50, amounting to a total audit cost of

¶ 25; Mings Aff. ¶ 21.) Ms. Smith sent a copy of the revised audit report to all parties. (Smith Aff. ¶ 11.) Ms. Smith did not receive any further challenges or documentation from Internet's attorney after that. (*Id.* ¶ 13.)

### D. The Amended Motion for Summary Judgment[5]

In its amended motion for summary judgment, Local 196 requests that the court grant summary judgment in its favor "for the amount so stated and verified in the Revised Audit previously attached to the original Motion for Summary Judgment." (Pl.'s Mot. at 1.) Specifically, pursuant to the revised audit report, Local 196 requests $165,514.31 in delinquent fringe benefit contributions. (Pl.'s LR Stmt. ¶ 25; Pl.'s Mem. at 5; Mings Aff. ¶ 21; Smith Aff. ¶ 12; Revised Audit at 2.) In addition, Local 196 requests $2,100.00 in audit costs (Pl.'s Mem. at 6; Pl.'s LR Stmt. ¶¶ 23, 25; Mings Aff. ¶¶ 17, 19, 21; Smith Aff. ¶¶ 9, 12), $16,655.10 in liquidated damages and/or interest (Pl.'s Mem. at 5-6; Mings Aff. ¶¶ 19, 22), and $7,983.50 in attorneys' fees and costs (*Id.*)

---

Marie Smith, the auditor, who states, however, that the additional cost of the audit was $277.50, not $227.50. (Smith Aff. ¶ 12.) The bill for the audit was not included in the record; thus, the court cannot ascertain whether the cost was $227.50 or $277.50. However, the Affidavit of Edgar Mings, Local 196's Business Manager, states that the additional audit cost was $227.50. (Mings Aff. ¶ 21.) Because Local 196 has not established that the additional audit cost amounted to $277.50 rather than $227.50, the court will consider the lower amount, $227.50, as the amount requested for the additional audit performed, and thus the total audit cost, $2,100.00.

[5] The motion for summary judgment presently before the court is an amended motion for summary judgment. Local 196 filed an earlier motion for summary judgment, including a request for over $600,000 in back wages. [Dkt 15.] That motion was denied without prejudice because Local 196 provided no information as to the basis for its claim for liquidated damages, interest, attorneys' fees, and back wages. [Dkt 16.] In its amended motion for summary judgment, Local 196 dropped its request for the back wages.

Thus, in sum, Local 196 requests a total amount of $192,302.91. (Pl.'s Mem. at 6.)[6]

The court set a briefing schedule on Local 196's amended motion for summary judgment, requiring Internet to file a response by October 20, 2004, and Local 196 to file a reply by October 27, 2004. (Order, Sep. 18, 2004.) [Dkt 18.] The court also scheduled an oral argument on the motion for November 17, 2004. (*Id.*) Internet failed to file a response to Local 196's motion, and failed to have anyone appear on its behalf at the oral argument. (Order, Nov. 17, 2004.) [Dkt 19.]

## LEGAL STANDARD

The court may properly grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the court must construe all facts and draw all reasonable and justifiable inferences in favor of the non-moving party. *Id.* at 255. The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met the initial burden, the non-moving party must designate specific facts showing that there is a genuine issue for trial. *Id.* at 324. "The mere existence of a scintilla of evidence in support of the [non-moving

---

[6] The total amount requested, $192,302.91, is $50.00 more than the sum of the individual amounts requested due to the $50.00 discrepancy in audit fees discussed above.

7

party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

## DISCUSSION

### A.   Fringe Benefit Contributions

As discussed above, Local 196 asserts that it is entitled to $165,514.31 in delinquent fringe benefit contributions pursuant to the Letter of Assent and the Agreement, and the Revised Audit. (Pl.'s Mem. at 5.)

It is undisputed that Internet signed a Letter of Assent agreeing to be bound to the Agreement and certain obligations thereunder, such as the payment of wages and fringe benefits. (Compl. Ex. A; Pl.'s LR Stmt. ¶¶ 7-9; Pl.'s Mem. at 5.)[7] It is also undisputed that Internet has been in violation of the Agreement and Letter of Assent since July 2002, by refusing to assign cable television work at job sites in Sandwich, Illinois to employees represented by Local 196. (Pl.'s LR Stmt. ¶¶ 12-20; Compl. Ex. C.) Furthermore, according to the revised audit report generated by Ms. Smith, it is undisputed that Internet was delinquent in paying fringe benefit contributions to Local 196 in the amount of $165,514.31. (Pl.'s LR Stmt. ¶ 25; Mings Aff. ¶ 21; Smith Aff. ¶¶ 12, 13; Revised Audit at 2.) Thus, pursuant to the Letter of Assent and the Revised Audit, Internet owes $165,514.31 to Local 196 in delinquent fringe benefit contributions. Judgment is hereby entered in favor of Local 196 and against Internet in that amount.

---

[7] Although Local 196 did not provide the court with a copy of the parties' Agreement, it did provide the court with a copy of the Letter of Assent, which shows that Internet agreed to be bound to the Agreement. (Compl. Ex. A.)

8

**B. Audit Fees**

Local 196 also asserts that it is entitled to approximately $2,100.00 in audit fees. The only basis upon which Local 196 asserts that it is entitled to that amount is Section 502(g)(2) of the Employee Retirement Income Security Act ("ERISA"), codified as 29 U.S.C. § 1132(g)(2). (Pl.'s Mem. at 5-6; Mings Aff. ¶¶ 18-19.) Specifically, Local 196 argues that "[t]here is no dispute that the [fringe benefit] Funds in question are Funds established under and governed by ERISA," and that, therefore, it is entitled to recover its audit fees. (Pl.'s Mem. at 6; Mings Aff. ¶ 18.)

Section 1132(g)(2) provides:

> In any action under this subchapter [Protection of Employee Benefit Rights] *by a fiduciary for or on behalf of a plan to enforce section 1145 of this title* in which a judgment in favor of the plan is awarded, the court shall award the plan –
> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of –
> (i) interest on the unpaid contributions, or
> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of the amount determined by the court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2) (emphasis added).

In this case, however, § 1132(g)(2) is not applicable because Local 196 did not bring this action to enforce § 1145 of ERISA. Instead, as mentioned above, Local 196 brought this action under Section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185, to enforce an arbitration award, alleging that Local 196 is a labor organization within the meaning of the Labor Management Relations Act, and therefore entitled to bring an action under that Act. (Compl. ¶¶ 1, 2, 4.) Local 196 never mentioned § 1145 of ERISA, or any other provision of ERISA, in its

9

complaint, never sought any remedies under § 1132(g)(2) in its complaint, and never alleged that it is a fiduciary that has standing under § 1132 to enforce ERISA obligations. Thus, Local 196 cannot rely on 29 U.S.C. § 1132(g)(2) to recover its audit fees. Because Local 196 did not claim any other basis under which its audit fees may be awarded, Local 196 cannot recover its audit fees.

C.      Interest or Liquidated Damages, and Attorneys' Fees and Costs

Finally, Local 196 asserts that it is entitled to $16,655.10 in liquidated damages or interest, and $7,983.50 in attorneys' fees and costs. (Pl.'s Mem. at 5-6; Mings Aff. ¶¶ 19, 22).[8] Local 196 asserts that it is entitled to those amounts pursuant to 29 U.S.C. § 1132(g)(2). (Pl.'s Mem. at 5-6.) Mr. Ming also states that Local 196 is entitled to those amounts "based on" the Letter of Assent and the Agreement, and the Revised Audit. (Mings Aff. ¶¶ 18, 19, 22.)

First, as discussed above, § 1132(g)(2) is not applicable in this case. Thus, Local 196 is not entitled to recover liquidated damages, interest, or its attorneys' fees and costs, under that section of ERISA.

Nor, as it turns out, is Local 196 able to collect those amounts pursuant to the Letter of Assent, the Agreement, or the Revised Audit. In contrast to its claim for fringe benefit contributions, which Local 196 expressly set out in its Statement of Undisputed Facts and which was not disputed by Internet, Local 196 failed to state in its Statement of Undisputed Facts that it was even entitled to liquidated damages or interest, or attorneys' fees and costs. Thus, unlike Local 196's clam for

---

[8] In its Memorandum, Local 196 asserts that it is entitled to liquidated damages computed at a rate of 10% of the delinquent contributions. (Pl.'s Mem. at 6.) In Edgar Mings' Affidavit, Mr. Mings asserts that Local 196 is entitled to that amount as interest rather than liquidated damages. (Mings Aff. ¶ 22.)

fringe benefit contributions, it cannot be said that Internet failed to dispute those amounts as being owed. Without that, there is simply no evidentiary basis in the record on which to award Local 196 liquidated damages, interest, or attorneys' fees and costs. The Letter of Assent does not state any terms or provisions of the Agreement; it simply states that Internet shall be bound to the provisions in the Agreement. (Compl. Ex. A.) The Agreement, which might have shed light on Internet's obligation to pay liquidated damages or interest or attorneys' fees and costs, was never provided to the court. And, the Revised Audit does not support Local 196's contention that it is entitled to liquidated damages or interest or attorneys' fees and costs, as it makes no mention of any of those items. Thus, Internet is not entitled to liquidated damages, interest, or attorneys' fees and costs, pursuant to the Letter of Assent, the Agreement, or the Revised Audit. Because Local 196 did not provide any other basis under which liquidated damages, interest, or attorneys' fees and costs may be awarded, that request is denied.[9] However, no later than January 10, 2005, Local 196 may move pursuant to Federal Rule of Civil Procedure 54(d)(2) for an award of attorneys' fees and non-taxable costs. That motion must specify the statute, rule or other grounds entitling Local 196 to attorneys' fees, and include an affidavit of counsel containing specific information supporting the amount of fees sought. Any opposition to that motion shall be filed no later than January 31, 2005.

**D.    Declaratory Judgment**

Local 196 is also entitled to a declaratory judgment, and the court hereby finds and declares

---

[9] As an aside, Local 196's calculation as to the liquidated damages or interest that it is entitled to appears to be incorrect. Ten per cent of the delinquent contributions ($165,514.31) is $16,551.43 not $16,655.10. Thus, if Local 196 had been entitled to liquidated damages or interest in the amount of 10% of the delinquent contributions, it would have been entitled to $16,551.43.

11

as follows: that Internet is bound to the terms and conditions of the Agreement as of June 21, 2001; that the Agreement has been renewed for the period effective December 1, 2001 through November 30, 2004; that Internet is in violation of the Agreement; and that Internet was bound under the Letter of Assent and the Agreement to submit all grievances and questions in dispute with IBEW, Local 196 regarding the work awarded at the job sites in Sandwich, Illinois to the Labor Management Committee.

## CONCLUSION

For the reasons discussed above, Local 196's Amended Motion for Summary Judgment is granted and judgment is entered in favor of Local 196 in the amount of $165,514.31. Local 196's request for audit fees, liquidated damages and interest is denied. Local 196's request for attorneys' fees is denied without prejudice. Pursuant to Rule 54(d)(2), Local 196 may file no later than January 10, 2005, a motion for attorneys' fees. Any opposition to that motion shall be filed no later than January 31, 2005. Taxable costs pursuant to 28 U.S.C § 1920 are awarded to Local 196. This is a final and appealable order.

IT IS SO ORDERED.

/Geraldine Soat Brown
United States Magistrate Judge

December 13, 2004